## CONSOLIDATED EDISON COMPANY OF NEW YORK, Inc.

v.

### The UNITED STATES.

Nos. 49654, 49655, 50432.

United States Court of Claims

Dec. 6, 1955.

James K. Polk, New York City, for plaintiff. Robert E. Coulson, Harold F. Noneman, and Gerald D. Groden, Washington, D. C., were on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen., H. Brian Holland, for defendant. Andrew D. Sharpe and Lee A. Jackson, Washington, D. C., were on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff sues to recover income taxes alleged to have been overpaid for the calendar years 1938, 1939 and 1941. The plaintiff kept its books and filed its income tax returns upon the accrual basis. The primary issue presented in these three cases is what year is the proper year for deduction of contested real estate taxes where payment of the

full amount of the tax assessed was made to the City and State of New York within the taxable years, but the correct amount of the liability was not settled until a subsequent taxable year.

The facts, which are fully set forth in the findings, are summarized for the purposes of this decision as follows:

The plaintiff is a public utility corporation engaged in the manufacture, distribution and sale of electrical energy and gas. During the years involved the plaintiff owned many hundreds of parcels of real estate in the City of New York which were subject to a tax under the laws of the State and City of New York on real estate owned by corporations.

Each parcel of real estate was appraised by the City Tax Commission and its value was placed upon a tentative assessment roll. Administrative proceedings were available to plaintiff to correct erroneous valuations. An application for correction of assessment (sometimes called a protest) had to be filed on forms supplied by the Tax Commission and all pertinent questions thereon had to be answered. One of the questions in the protest which had to be answered was "What do you consider was the full value of the property on January 25 of this year?" Failure to answer this question was fatal to the application. Judicial review was available by way of a certiorari proceeding, an exclusive remedy, only upon exhaustion of the administrative procedure.

In all cases, except where illegality of the tax in its entirety was alleged rather than to its form or method, the petition for judicial review had to set forth, as did the plaintiff's original protest, what the full value of the property was claimed to be. Thus in complying with the requirement of the law of New York, and alleging both in the protest and in the petition to the court the claimed full value of the property involved, a taxpayer admitted liability for real estate tax thereon in a certain and definite amount, namely, the claimed value of the property multiplied by the established tax rate.

The institution or pendency of litigation for the correction of an assessment did not postpone the dates the bills for the real estate taxes became due and payable. Failure to pay the tax bills when due subjected the property involved to a tax lien which had the effect of a judgment lien which could have been foreclosed and the property sold. In addition, a penalty of interest at 7 percent per annum was incurred. There was no provision in the New York law for suspending or removing the tax lien, whether by injunction, bond or otherwise, other than by payment of the taxes thereon, as billed. Thus an aggrieved property owner had to first pay the real estate taxes and then seek to rectify the error by the exclusive remedy or run the risk, in addition to incurring 7 percent interest, of having the tax lien foreclosed and the property sold.

The parties have agreed that the facts are accurately reflected in the following simplified example, for the taxable year 1939, which is applicable to all the years involved. For the year 1939 plaintiff was notified, on January 25, 1939, of a tentative assessment for real estate taxes in the amount of $100. Within the statutory period and by March 15, 1939, plaintiff, based upon the best judgment of its officers, duly filed a bona fide protest admitting liability in the amount of $85, and petitioning for an administrative reduction of the tentative assessment in the amount of $100 by the amount of $15. After a hearing duly held, and on or about May 25, 1939, final assessment was made in the amount of $100. Thereafter, on or about October 1, 1939, under protest and for the stated purpose of avoiding liens, seizures, levies, penalties, interest, etc., and reserving all rights, plaintiff made payment of the assessed tax in the amount of $100. Within the statutory period, on October 25, 1939, certiorari proceedings were instituted admitting liability in the amount of, and denying liability in excess of, $85.

On August 21, 1941, the Supreme Court of the State of New York entered its order in the certiorari proceedings fixing the tax liability at $95. In October 1941, plaintiff received a refund of the excess payment in the amount of $5.

The plaintiff accrued on its books and deducted on its Federal tax returns for 1939 the full $100. Upon audit the Commissioner of Internal Revenue allowed only $95 for that year, but included the $5 refund received in 1941, as income for 1941. The defendant now concedes that if only a $95 deduction is allowed for 1939, then the $5 refund should not be included as income in 1941. Timely claims for refunds based upon, among other things, an understatement of depreciation and amortization for 1938, 1939, and 1941 were made and partially allowed by the Commissioner. However, the Commissioner offset these refunds by adjustments made because of his treatment of the real estate tax involved in this case.

The defendant raises pro forma the question of the statute of limitations in cases Nos. 49654 and 49655. It states that since plaintiff filed its claims for refund for 1938 and 1939, on March 10, 1942, and March 11, 1943, respectively, plaintiff could have sued within six months thereafter and therefore its petitions in those two cases, filed on May 25, 1950, are barred by 28 U.S.C. § 2501. This question has been decided by our decision in Detroit Trust Company v. United States, 130 F.Supp. 815, 131 Ct. Cl. 223, where we held that § 3772 of the Internal Revenue Code of 1939, as amended, was the governing statute of limitations and that the six-year statute of limitations contained in 28 U.S.C. § 2501 was not applicable. The petitions in all three of plaintiff's cases were therefore timely filed.

The plaintiff contends that it should be allowed deductions in 1938, 1939, and 1941 of the amounts of real estate taxes admitted in those years to have been due ($85); deductions in 1941 upon termination of the litigation of the additional amounts of taxes determined to be due over and above the amounts previously admitted ($10); and exclusion from 1941 income of amounts of excess payments of real estate taxes in the prior years which were refunded in 1941 ($5). The defendant's present position is that plaintiff is entitled to deductions in 1938, 1939, and 1941 of amounts of real estate taxes paid in those years ($100), and the inclusion in 1941 income of the amounts of excess payments of real estate taxes for those years which were refunded in 1941 ($5).

The pertinent provisions of the applicable sections of the Internal Revenue Code (26 U.S.C.) are set forth below.[1]

The plaintiff's argument is twofold. First, it argues that in order to accrue a deductible item, admission or absence of denial of liability is necessary, relying on United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270, and Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct.

[1]. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * * (c) Taxes generally. * * * Taxes paid or accrued within the taxable year * *."
"§ 41. General rule. The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *."
"§ 43. Period for which deductions and credits taken. The deductions and credits * * * provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *"
"§ 48. Definitions. When used in this chapter—* * * (c) 'paid or incurred', 'paid or accrued'. The terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under this Part."

596, 88 L.Ed. 725. Second, it argues that generally accepted accounting principles require that the disputed portion of a tax liability, although paid, should not be accrued until liability is established. The plaintiff, citing United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733 and Lewyt Corporation v. Commissioner, 349 U.S. 237, 75 S.Ct. 736, contends that these recognized accounting principles are highly persuasive on questions of accruals.

The defendant contends that our decision in Chestnut Securities Co. v. United States, 62 F.Supp. 574, 104 Ct.Cl. 489, is controlling.

In our opinion the rule stated in the Chestnut Securities case is applicable in the instant case. In that case the taxpayer, on the accrual basis, paid 1936, 1937 and 1938 state taxes after a District Court decision in 1940. The Circuit Court affirmed, Chestnut Securities Co. v. Oklahoma Tax Comm., 10 Cir., 125 F.2d 571 and the Supreme Court denied certiorari in 1942. 316 U.S. 668, 62 S.Ct. 1035, 86 L.Ed. 1744. The taxpayer contended in a suit in this court that the state taxes were deductible in 1940 when paid and the defendant contended that they were deductible in 1942 when the litigation was finally decided. We held they were deductible in 1940 because payment discharged the liability and accrued the taxes in that year. The Commissioner of Internal Revenue has adopted and is following this rule. C.B.1947–2, G.C.M. 25298, pp. 39, 43, 44. The plaintiff asserts that the case is either distinguishable or erroneous.

It is settled that a taxpayer may not accrue an expense when he is denying liability and refusing and contesting its payment. Dixie Pine Products Co. v. Commissioner, supra; Security Flour Mills Co. v. Commissioner, supra. The plaintiff argues from this principle that there must therefore be an admission or absence of denial of liability before an item may be accrued and that the payment of the liability within the taxable year has no effect on its accrual since payment was made under protest and litigation was immediately started to obtain a repayment. This is not necessarily true.

Under the accrual system of accounting revenues are accrued as nearly as practicable to the period earned and expenses, which include taxes, are accrued in the period and against the revenues they helped to produce. Our system of taxation requires a determination of taxes on an annual basis predicated on the economic events which occurred and were in existence during a taxable year. United States v. Anderson, supra; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Security Flour Mills Co. v. Commissioner, supra. The Supreme Court stated that:

"' * * * Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.' * * * [Burnet v. Sanford & Brooks Co., supra, 282 U.S. at page 365, 51 S.Ct. at page 152]." Security Flour Mills Co. v. Commissioner, supra, 321 U.S. at page 286, 64 S.Ct. at page 599.

"* * * The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount. * * *" Security Flour Mills Co. v. Commissioner, supra, 321 U.S. at pages 286, 287, 64 S.Ct. at page 599.

When expenses are incurred and therefore should be accrued under the accrual method of accounting for tax purposes, is determined from a practical, not a technical legal test. Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538.

Insofar as the plaintiff in the instant case was concerned it incurred an obligation in the amount of $100 in 1939, since

it, as a practical matter, had to and did discharge the full amount of the real estate taxes assessed. Its obligation to pay, insofar as the taxable year 1939 was concerned, had become final and definite in amount when it paid the full amount of the real estate tax for 1939 assessed in that year. Viewing the situation at the end of that taxable year, as we must, we find that the plaintiff incurred and paid a $100 obligation, although it was under protest and with the bona fide expectation that a part of the payment would be subsequently refunded.

The plaintiff actually accrued on its books and deducted in its tax returns the full $100 amount. We think this was proper because the plaintiff incurred an expense in the amount of $100 in that year. Had the plaintiff failed to obtain a repayment of its real estate taxes for 1939, its returns would have correctly reflected its income for that year under the accrual method. There is no compelling reason why a sustained expense should be postponed until settlement of the question of repayment. Since the plaintiff was successful and obtained a repayment of $5, under our annual accounting concept this amount should be included as income in 1941, the year plaintiff's right to the repayment became final.

The underlying reason for the rule in the Dixie Pine Products and the Security Flour Mill cases of refusing a deduction where the taxpayer has not paid the expense and is contesting it, is because the expense may never be incurred. In the instant case the expense had been incurred and actually paid within the taxable year and is therefore deductible in that year.

What we have said does not mean that the mere payment of an item accrues that item, but rather we hold that payment of an item which is otherwise accruable in the taxable year accrues the item even though payment is made under protest and even though litigation is started within the taxable year to obtain repayment. Therefore, the plaintiff's prepayment in 1941 of part of its 1942 taxes does not accrue those taxes in 1941.

The plaintiff's argument based upon the fact that accepted accounting principles require that the disputed portion of the tax liability, although paid, should not be accrued until settlement of the dispute, lacks sufficient persuasiveness, under the facts presented in this case, because such principles represent a refinement in ascertaining net income that would be impractical and, in our opinion, infeasible in the administration of the revenue laws.

In view of the complex computations involved in these three cases, the parties have agreed upon computations of the amounts of income taxes overpaid or underpaid by the plaintiff dependent upon which of the alternatives the court finds to be correct. These computations are set forth in finding 47. We hold that finding 47(C) sets forth the correct deductions and inclusions. Finding 47(C) provides for the "allowance as deductions in 1938, 1939 and 1941 of amounts of real estate taxes paid in those years ($100.00); and inclusion in 1941 income of the amounts of excess payments of real estate taxes for said years that were refunded in 1941 ($5.00)." Translated into dollar amounts in the individual cases, according to this finding, the plaintiff is entitled to recover $128,329.55 in case No. 49654; $105,305.58 in case No. 49655, and nothing in case No. 50432.

Judgment will be entered for plaintiff in case No. 49654 in the amount of $128,329.55, and in case No. 49655 in the amount of $105,305.58, with interest thereon, respectively, as provided by law. The petition in case No. 50432 is dismissed.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.