# UNITED STATES *v.* CONSOLIDATED EDISON CO. OF NEW YORK, INC.

No. 357. Argued April 24, 1961.—
Decided May 22, 1961.

*John B. Jones, Jr.* argued the cause for the United States. On the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Rice, Acting Assistant Attorney General Sellers, Ralph S. Spritzer, Harry Baum* and *Grant W. Wiprud.*

*James K. Polk* argued the cause for respondent. With him on the briefs were *Richard Joyce Smith, Julius M. Jacobs* and *Harold F. Noneman.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Respondent brought this action in the United States District Court for the Southern District of New York to recover a claimed overpayment of federal income taxes for the year 1951. It keeps its books and files its returns on a calendar-year accrual basis. The case turns on the correct determination of the proper year of accrual and deduction of certain contested real estate taxes. Specifically, the question is whether the contested part of a real estate tax *accrued* (1) in the year it was assessed and, for the purpose—and as the only mode recognized by the local law—of avoiding seizure and sale of the property for the contested tax while the contest was pending, was "paid" by the taxpayer, or (2) in the year the contest was finally determined.

The District Court, following the holding of the Court of Claims in *Consolidated Edison Co.* v. *United States,* 133 Ct. Cl. 376, 135 F. Supp. 881, that such a "payment" of the tax "accrues the item even though payment is made under protest and even though litigation is started within the taxable year to obtain repayment," 133 Ct. Cl., at 383–384, 135 F. Supp., at 885, held, without opinion, that the contested part of the tax accrued in the year of the "payment." On appeal, the Court of Appeals, by a divided court, held that the contested part of the tax accrued in the year the contest was finally determined, and reversed the judgment. 279 F. 2d 152. It reasoned that inasmuch as respondent was "keeping its books on the accrual basis," the contested part of the tax accrued "only when all events [had] occurred which determine[d] the fact and amount of the tax liability." *Id.,* at 155. To resolve the conflict between the decision below and *Consolidated Edison Co.* v. *United States, supra,* we granted certiorari. 364 U. S. 890.

During the years involved—1946 through 1950—respondent owned numerous tracts of real estate in New York City which were subject to annual local property taxes. Under the New York law, the City Council annually fixes the tax rate, and the City Tax Commission annually fixes the property valuations. Thus the amount of the tax on each tract is determined by multiplying the valuation by the tax rate. The tax rate is not contestable, but a timely application (commonly called a "protest") may be made to the City Tax Commission to correct an erroneous valuation. Among other things, the protest must state the amount which the taxpayer "consider[s] was the full value of the property on January 25 [of the current] year" thus to establish the amount of the tax that is not contested. Upon exhaustion of this administrative procedure, a review of the Commission's determination may be had by a judicial proceeding, commonly called a certiorari proceeding, in the State Supreme Court, which is the taxpayer's sole and exclusive remedy. But the institution of such a suit does not stay or suspend the maturity of the tax bill, the accrual of 7% interest on it, nor the seizure and sale of the property to satisfy the tax lien. Thus, to obtain review, the taxpayer must either "pay" the tax or suffer the interest penalty and run the risk of seizure and sale of its property.[1]

Though taxes for each of five years on hundreds of tracts are involved and the aggregate amount is very substantial, the parties very commendably stipulated in the District Court that the facts are sufficiently reflected, for the purposes of this suit, in the following simplified example:

---

[1] The procedures allowed by the laws of New York for the contest of real property taxes are more fully set forth in *Consolidated Edison Co.* v. *United States,* 133 Ct. Cl. 376, 378, 135 F. Supp. 881, 882.

In each of the years 1946 through 1950, respondent was notified of a tentative valuation which, at the established tax rate, would produce a tax of $100. Respondent then timely filed a *bona fide* protest (in respect of many, but not nearly all, of its tracts) stating a valuation which, at the established tax rate, would produce a tax of $85, and asking that the balance of the proposed valuation be stricken as excessive. After hearing, the Commission rejected the protest, and an assessment in the amount of $100 was made. Thereupon respondent, under protest and for the honestly stated purpose of avoiding the interest penalty and the seizure and sale of its property while it was contesting the Commission's valuation by certiorari proceedings in the state court, remitted to the city cash in an amount equal to the tax of $100, and immediately thereafter commenced a certiorari proceeding in the proper court, in which it again admitted liability for a tax in the amount of $85, but denied all liability for any tax in excess of that amount. In December 1951, the court, upon the consent of the parties to the action, entered its order in (each of) the certiorari proceedings fixing respondent's tax liability at $95, and thereupon the city forthwith returned $5 to respondent.

Although it was then engaged in a contest with the Commissioner in the Court of Claims over an identical question, namely, the proper income tax treatment to be accorded the $15 for each of the years 1938, 1939 and 1941—which issue was decided by the Court of Claims in December 1955 in favor of the Government, *Consolidated Edison Co.* v. *United States, supra*—respondent, in terms of the illustrative example, accrued on its books and deducted on its federal income tax returns, for each of the years 1946 through 1950, the full $100; and in its return for the year 1951—in which year the real estate tax liability was determined to be $95—respondent failed

to deduct the $10 from, and included the $5 in, its gross income for that year.[2]

Believing that this treatment of the $15 in 1951 was erroneous and resulted in its paying a lesser amount of federal income taxes in each of the years 1946 through 1950, and more in the year 1951, than it should have paid,[3] respondent filed in February 1955 its claim for refund of so much of its 1951 income taxes as resulted (1) from its failure to deduct the $10 of real estate tax that was determined, in that year, to be valid, and (2) from its inclusion in gross income of the $5 returned to it in that year. Upon rejection of that claim, respondent timely brought this action in the District Court to recover the refund claimed, and obtained the result already stated.

It is settled that each "taxable year" must be treated as a separate unit, and all items of gross income and deduction must be reflected in terms of their posture at the close of such year. *Burnet* v. *Sanford & Brooks Co.,*

---

[2] Respondent asserts that this treatment of the $15 in its 1951 federal income tax return was made under compulsion of the Commissioner's erroneous G. C. M. 25298, issued directly to it in 1947 (1947–2 Cum. Bull. 39), saying, "a contested tax liability accrues not later than time of payment, notwithstanding continuation of contest. The accrual basis of accounting relates to the deductibility of unpaid items," and that the Commissioner insisted upon that treatment, despite his modification thereof in *Mim.* 6444 (1949–2 Cum. Bull. 11), saying in pertinent part, that "payment of [a] contested tax liability as a prerequisite for appeal is not deductible under G. C. M. 25298."

[3] The economic consequences to the parties arise from the fact that corporate income tax rates (normal plus surtax) were increased from 38% in 1946 to 50¾% in 1951, and, in this particular instance, more revenue would be produced by taking the deduction in 1946–1950 than in 1951. The taxpayer recognizes that, if its position be sustained, the Commissioner will have one year after entry of final judgment herein to reaudit the taxpayer's 1946–1950 returns and to assess deficiencies based upon deduction of the $15 in those years, in accordance with the provisions of §§ 1311–1315 of the Internal Revenue Code of 1954.

282 U. S. 359; *Heiner* v. *Mellon,* 304 U. S. 271; *Guaranty Trust Co.* v. *Commissioner,* 303 U. S. 493; *Security Mills Co.* v. *Commissioner,* 321 U. S. 281. And the parties agree that, under the applicable federal statutes,[4] neither the Government nor an accrual-basis taxpayer may cause an item to be deducted in a year other than the one in which it accrued. *United States* v. *Anderson,* 269 U. S. 422; *Security Mills Co.* v. *Commissioner, supra; United States* v. *Olympic Radio & Television,* 349 U. S. 232. They also agree that the "touchstone" for determining the year in which an item of deduction accrues is the "all events" test established by this Court in *United States* v. *Anderson, supra,*[5] and since reaffirmed by this Court on numerous occasions, so that it is now a fundamental principle of tax accounting. See, *e. g., Lucas* v. *American Code Co.,* 280 U. S. 445; *Brown* v. *Helvering,* 291 U. S. 193; *Dixie Pine Co.* v. *Commissioner,* 320 U. S. 516; *Security Mills Co.* v. *Commissioner, supra.*[6] The parties

---

[4] The applicable statutes are §§ 23 (c), 41, 42, 43 and 48 of the Internal Revenue Code of 1939 (26 U. S. C. (1952 ed.), §§ 23 (c), 41, 42, 43, 48). These provisions are the same as their counterparts in prior Revenue Acts and in the Internal Revenue Code of 1954. Inasmuch as those statutes are not really in contest in this case, it would serve no useful purpose even to abstract them here.

[5] In the *Anderson* case, this Court declared the so-called "all events" test as follows: "In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given acccounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued." 269 U. S., at 441.

[6] In the *Dixie Pine* case, this Court reaffirmed the "all events" test as follows: "It has long been held that in order truly to reflect the

also recognize that this Court amplified, or as the Government says "added a refinement to," the "all events" test by its holding, in *Dixie Pine Co.* v. *Commissioner, supra,* that an accrual-basis taxpayer could not, while "contesting liability in the courts," deduct "the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability," but "must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated." 320 U. S., at 519. That principle was specifically reaffirmed in *Security Mills Co.* v. *Commissioner, supra.*[7]

That $85 of the $100 assessment was admitted to be owing and was intended to be paid and satisfied by the remittance, and thus accrued in the year of the remittance, is not in dispute. Respondent's good faith, in contesting $15 of the assessment, is not in dispute, for the Government expressly "disavow[s] any suggestion that the respondent . . . filed its claims against the City of New York in bad faith, . . . calculatingly inflated those claims, or . . . failed to prosecute them with diligence."

income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer." 320 U. S., at 519.

In the *Security Mills* case, this Court reaffirmed that test as follows: "It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting." 321 U. S., at 284.

[7] In the *Security Mills* case, after saying "that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent," the Court concluded that "[s]ince [the taxpayer] denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the [tax] claim as an accrued liability." 321 U. S., at 284.

Nor is it questioned that accrual of such taxes in the proper year accords with "good accounting" principles.

But concordance of the views of the parties ends at this point. The Government contends that the remittance by respondent to the city, in each of the years in question, of cash in an amount equal to the whole of the assessed tax admitted liability for, and was intended to and did constitute "payment" and "satisfaction" of, both the disputed and undisputed parts of the assessment; and that when "the taxpayer pays the item and thereby discharges its liability, the expense has been incurred and there is no longer any contingency which would prevent its accrual." Respondent, on the other hand, insists that its remittance to the city was not intended to and did not admit liability for, nor constitute "payment" and "satisfaction" of, the contested $15 of the assessment, but was, in effect, a mere deposit, in the nature of a cash bond, required of respondent, in a practical sense, by the local law as the only available mode of avoiding the risk of seizure and sale of the property for the contested tax while its validity was being diligently contested in the only way allowed by the laws of the State.

Thus the very narrow issue here is whether the remittance admitted liability for, and constituted "payment" and "satisfaction" of, the contested part of the assessment and thereby rendered it accruable in the year of the remittance. Like the Court of Appeals, we think the respondent is right in its contention, and that $10 of the contested $15 of the tax accrued when liability in that amount was finally determined by the New York court in 1951, and that the $5, for which respondent was by that judgment held not liable, and which was returned to it by the city, was not income to respondent in 1951.

Although the Government attempts to distinguish the *Anderson, Dixie Pine* and *Security Mills* cases on the ground that "payment" of the contested taxes had not

been made in those cases, it primarily relies on the decisions of the Court of Claims in *Chestnut Securities Co.* v. *United States,* 104 Ct. Cl. 489, 62 F. Supp. 574, and *Consolidated Edison Co.* v. *United States,* 133 Ct. Cl. 376, 135 F. Supp. 881.

The *Chestnut Securities* case turned on the question whether certain judicially contested state income taxes (for the years 1936–1938) accrued when they were paid in 1940, as claimed by the accrual-basis taxpayer, or when the final judgment upholding their validity was rendered in 1942, as contended by the Government. Squarely contrary to its contention here, the Government, relying on *Security Mills Co.* v. *Commissioner, supra,* there contended that "since the [taxpayer's] accounts were kept and its tax returns made on the accrual basis, it could not take its deduction for the taxes . . . paid to the State . . . until the year 1942, when its suit for their return was finally decided adversely to it." On the facts of that case, the Court of Claims held that "the Government [was] wrong" in that contention. Although, in full consonance with the *Security Mills* case, the Court of Claims said "[o]ne is not entitled to accrue a debt or other liability which is asserted against him but which he disputes and litigates, until the litigation is concluded," it went on to say "[b]ut if a liability is asserted against him and he pays it, though under protest, and though he promptly begins litigation to get the money back, the status of the liability is that it has been discharged by payment. It is hardly conceivable that a liability asserted against him, which he has discharged by payment, has not yet 'accrued' within the meaning of the tax laws and the terminology of accounting. Accrual, from the debtor's standpoint, precedes payment, and does not survive it." 104 Ct. Cl., at 494–495, 62 F. Supp., at 576. And after pointing to this Court's use of the phrase

"and failed to pay" in its holding in the *Security Mills* case that "Since [the taxpayer] denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government's claim as an accrued liability," the Court of Claims concluded: "In the instant case the taxpayer denied liability, but paid. We think it thereby 'accrued' the taxes and interest, if accrual is requisite at all, in the case of the debtor, when actual payment has occurred." 104 Ct. Cl., at 495, 62 F. Supp., at 576.

The *Consolidated Edison* case involved the same parties, facts and questions as the present case, though in respect to earlier tax years. Although recognizing that this Court's opinions in *Security Mills Co.* v. *Commissioner, supra,* and *Dixie Pine Co.* v. *Commissioner, supra,* had "settled" the law to be "that a taxpayer may not accrue an expense when he is denying liability and refusing and contesting its payment," the Court of Claims rejected, as "not necessarily true," the taxpayer's argument "that there must therefore be an admission or absence of denial of liability before an item may be accrued and that the payment of the liability within the taxable year has no effect on its accrual since payment was made under protest and litigation was immediately started to obtain a repayment" (133 Ct. Cl., at 382, 135 F. Supp., at 884); and, purporting to follow, but seemingly departing from, its decision in the *Chestnut Securities* case, the Court concluded "that payment of an item *which is otherwise accruable in the taxable year* accrues the item even though payment is made under protest and even though litigation is started within the taxable year to obtain repayment." 133 Ct. Cl., at 383–384, 135 F. Supp., at 885. (Emphasis added.) On that conclusion the Court rendered judgment for the Government.

Just what the Court meant by the phrase we have italicized was not explained, but it is evident that if the tax item was "otherwise accruable in the taxable year," payment—whether of a character that would constitute an admission of the asserted liability or a mere deposit to enable contest of the liability—certainly would not render the item non-accruable; and if, in the absence of payment, the item was "otherwise accruable in the taxable year," payment would be immaterial, or at least unnecessary, to the question of accruability. It thus appears that the Court's judgment was contrary to its rule in that case, for, although it regarded the remittance as "payment" of the asserted tax liability, admittedly the contested part of the tax was not "*otherwise* accruable in the taxable year."

Disagreeing with the conclusion of the Court of Claims in the *Consolidated Edison* case, the Court of Appeals concluded, we think correctly, that the question of accruability of the tax—apart from the issue respecting "payment" and "satisfaction"—was governed by the "all events" test established by this Court in *United States* v. *Anderson, supra* (see note 5), as amplified and affirmed in *Dixie Pine Co.* v. *Commissioner, supra,* and reaffirmed as amplified in *Security Mills Co.* v. *Commissioner, supra.* See notes 6 and 7.

As to whether respondent's remittance of the full $100 to the city, in the circumstances of this case, constituted an admission of liability for, and a "payment" and "satisfaction" of, the contested $15 of the assessment, the Court of Appeals recognized that this Court's opinions in the *Anderson, Dixie Pine* and *Security Mills* cases refer to the fact that "payment" of the taxes sought to be deducted in those cases had not been made by the taxpayers, but it thought, and we agree, that those references were made only for the sake of complete accuracy to an important but, so far as those cases were concerned, a

collateral matter, and not to the determinative considerations of those cases, which were the "all events" test as they state it.

"Payment" is not a talismanic word. It may have many meanings depending on the sense and context in which it is used. As correctly observed by the Court of Appeals, "A payment may constitute a capital expenditure, an exchange of assets, a prepaid expense, *a deposit,* or a current expense," and "[w]hen the exact nature of the payment is not immediately ascertainable because it depends on some future event, such as the outcome of litigation, its treatment for income tax purposes must await that event." 279 F. 2d, at 156. (Emphasis added.)

Of course, an unconditional "payment" made by a taxpayer in apparent "satisfaction" of an asserted matured tax liability is, without more, plain and persuasive evidence, at least against the taxpayer, that "all the events [have] occur[red] which fix the amount of the tax and determine the liability of the taxpayer to pay it," *United States* v. *Anderson, supra,* at 441, and that the item so paid and satisfied has accrued.

But where, as stipulated by the parties in this case, the remittance or "payment" did not admit, but specifically denied, liability for, and was not intended to satisfy, the contested $15 of the assessment, but was, in effect, a mere deposit, "in the nature of a cash bond for the payment of [so much, if any, of the contested] taxes [as might] thereafter [be] found to be due" (*Rosenman* v. *United States*, 323 U. S. 658, 662, and see *Lewyt Corp.* v. *Commissioner*, 215 F. 2d 518, 523 (C. A. 2d Cir.)), and was made for the sole purpose of staying—there being no other way to stay—an otherwise possible seizure and sale of the property for the contested tax while its validity was being honestly and diligently contested in the only way allowed by the law of the State, it will not do to

say that the taxpayer has made an unconditional "payment" in apparent "satisfaction" of the contested part of an asserted matured tax liability, and thereby rendered it immediately accruable.

We therefore conclude that $10 of the contested $15 tax liability accrued not in the year of the remittance, but in 1951 when the New York court entered its final order determining that liability; and that the $5, for which respondent was held not liable by that judgment and which was returned to it by the city, was not income to respondent in 1951.

*Affirmed.*