**RICHMOND HOSIERY MILLS**

v.

**The UNITED STATES.**

No. 455–57.

United States Court of Claims.

July 18, 1962.

James V. Heffernan, Washington, D. C., for plaintiff. Joseph B. Brennan, Atlanta, Ga., on the briefs.

Harold S. Larsen, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., on the brief.

LARAMORE, Judge.

This suit is before the court on cross-motions for summary judgment. It is an action brought to obtain a refund of income tax for the year 1946, based upon a claimed "net operating loss" carryback from the year 1948. The "net operating loss" which plaintiff claims it incurred in 1948 depends upon whether certain deficiencies in excess profits taxes for the years 1942 to 1945, which the Commissioner of Internal Revenue assessed and collected in 1948, are deductible under 26 U.S.C. (I.R.C.1939) § 122(a) and (d) (6) (1946 Ed.),[1] for the year 1948. It is clear from the admissions in the pleadings that plaintiff would have a net operating loss for 1948 in the sum of $96,396.-44 if such excess profits tax deficiencies are fully deductible for that year under section 122(d) (6), and that plaintiff would have no net operating loss for 1948 if no part of such deficiencies are deductible for that year.

Taxpayer, a Georgia corporation, kept its books and computed its tax returns on the accrual basis. It timely filed its excess profits tax returns for each of the years 1942 to 1945 and paid the tax shown to be due thereon. Application for relief under section 722 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 722 was filed for each such year after the return for such year was filed,

---

1. The statutory definition of "net operating loss" contained in this section of the Code is as follows:

"§ 122. Net operating loss deduction

"(a) Definition of net operating loss.

"As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

\* \* \* \* \*

"(d) Exceptions, additions, and limitations.

\* \* \* \* \*

"(6) There shall be allowed as a deduction the amount of tax imposed by Subchapter E of Chapter 2 [i. e., excess profits tax] paid or accrued within the taxable year, \* \* \*."

but the excess profits tax liability shown on each return, and paid, was computed without regard to section 722.

Deficiencies in excess profits taxes for the years 1942 to 1945, amounting to $194,758.46, were proposed by a revenue agent in a report dated June 15, 1948. On June 30, 1948, plaintiff filed a waiver on form 874, waiving restrictions on assessment and collection of such deficiencies, but the waiver was qualified by a statement thereon that plaintiff did not admit that the deficiencies were correct, and that plaintiff reserved the right to file and prosecute claims for refund. The Commissioner of Internal Revenue assessed such deficiencies on September 30, 1948, and collected the full amount thereof, with interest, in October and November of 1948.

On February 10, 1949, plaintiff filed claims for refund of its excess profits taxes for the years 1942 to 1945 on the ground that in determining the deficiencies in question the Commissioner had failed to include certain stock dividends in plaintiff's equity invested capital.

On August 29, 1950, the Commissioner rejected plaintiff's applications for relief under section 722, which were filed as previously noted. On November 27, 1950, plaintiff filed with the Tax Court of the United States a petition contesting the correctness of the Commissioner's denial of relief under section 722, and in the alternative, contesting the correctness of the Commissioner's failure to include the stock dividends in equity invested capital. In 1952 the Tax Court decided the section 722 issue against the plaintiff, and in 1955 the Tax Court decided the stock dividend issue against the plaintiff. Plaintiff filed petitions for review of the Tax Court's decision by the Court of Appeals for the Fifth Circuit, with respect to the years 1942, 1944, and 1945, and by the Court of Appeals of the Sixth Circuit with respect to the year 1943. The decision of the Tax Court, on the stock dividend issue, was reversed by both the Fifth and Sixth Circuits during the year 1956. Richmond Hosiery Mills v. Commissioner, T.C.Memo. 1955–214, 14 T.C. M. 847 (1955), rev'd 233 F.2d 908 (5th Cir.1956), and 237 F.2d 605 (6th Cir. 1956).

Since the taxpayer was on the accrual method of accounting the sole question presented to this court is in what year did the deficiencies accrue. The law is now well settled in this area that an accrual basis taxpayer may claim deductions only for the year of their accrual. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024; Lewyt Corp. v. Commissioner, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029. Although the parties recognize this to be the law, nevertheless they are in dispute as to which year the deduction claimed did, in fact, accrue. Again, the parties are in agreement that a taxpayer may not accrue an expense while it is contesting liability, Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270, but they are in dispute as to the definition of a "contest."

The anomaly that presents itself in this case is that both parties have reversed their respective views from that urged when this action was first brought. This was occasioned by the intervening Supreme Court decision in United States v. Consolidated Edison Co. of New York, Inc., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed. 2d 356.

Originally, when this action was brought in 1957, the plaintiff contended that it contested the entire asserted deficiency thus preventing accrual until the deficiency was paid in 1948. The Government's position was that there was no contest of the asserted deficiency and thus the tax liability was properly atrributed to the years in which the income was earned. That there was no "contest" seems doubtful in view of the fact that litigation involving this precise issue was presented to the Tax Court and the Courts of Appeals for the Fifth

and Sixth Circuits, and that a final determination was not reached until 1956.

When the taxpayer filed the instant suit in 1957 it based its claim primarily on two decisions of this court, Chestnut Securities Co. v. United States, 62 F.Supp. 574, 104 Ct.Cl. 489; Consolidated Edison Co. of New York, Inc. v. United States, 135 F.Supp. 881, 133 Ct.Cl. 376, cert. denied 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444. These cases supported taxpayer's contention that payment of a contested tax liability rendered it immediately accruable despite the fact that liability was being contested in the court. Undoubtedly, the taxpayer's position, when it filed its petition in this court, was in accord with the rulings of this court, for the court said in the Chestnut Securities case, 62 F.Supp. at page 104 Ct.Cl. at page 494:

> " * * * One is not entitled to accrue a debt or other liability which is asserted against him but which he disputes and litigates, until the litigation is concluded. But if a liability is asserted against him and he pays it, though under protest, and though he promptly begins litigation to get the money back, the status of the liability is that it has been discharged by payment. It is hardly conceivable that a liability asserted against him, which he has discharged by payment, has not yet 'accrued' within the meaning of the tax laws and the terminology of accounting. Accrual, from the debtor's standpoint, precedes payment, and does not survive it."

Consistent with this court's holding in the above case, we reasserted this view when the question was again put to us in Consolidated Edison Co. v. United States, supra. There we rejected the taxpayer's argument that the payment of the liability within the taxable year had no effect on its accrual since payment was made under protest and litigation was immediately started to obtain a repayment. We held that the remittance, even though liability was contested, rendered the assessment accruable in the year of the remittance.

Consequently, the plaintiff premised this case on the correctness of this court's holdings in the above styled cases. While this case was pending, on May 22, 1961, the Supreme Court rendered its decision in United States v. Consolidated Edison Co., supra. This opinion stripped the authority from this court's decisions in Consolidated Edison and Chestnut Securities. The Supreme Court explained more fully its definition of accruability as established in United States v. Anderson, supra, and rejected this court's innovation that payment renders an item accruable in the year of remittance. The Court stated 366 U.S. at page 391, 81 S.Ct. at page 1332:

> " 'Payment' is not a talismanic word. It may have many meanings depending on the sense and context in which it is used. As correctly observed by the Court of Appeals, 'a payment may constitute a capital expenditure, an exchange of assets, a prepaid expense, a *deposit*, or a current expense,' and '[w]hen the exact nature of the payment is not immediately ascertainable because it depends on some future event, such as the outcome of litigation, its treatment for income tax purposes must await that event.' 279 F.2d 152, at 156."

The effect of the Supreme Court's decision on the instant case is obvious. The defendant then altered its position, mildly asserting that there never had been a contest but vigorously contending that if there were a contest then the liability which is contested is not accrued when payment is made but when the controversy is finally determined. The taxpayer found itself on the horns of a dilemma: if the tax liability were not contested, its accrual was not postponed beyond the years in which the income earned was attributable (National Forge & Ordnance Co. v. United States, 158 F.Supp. 860, 141 Ct.Cl. 880), and if it were contested, the liability may not be accrued until the contest is finally deter-

mined. Attempting to extricate itself from its perilous perch the taxpayer realigned its position on the theory that no contest existed at the end of the taxable year. Further, if a contest did exist it pertained only to relief under section 722 and to the revenue agent's refusal to include the stock dividends in equity invested capital.

Plaintiff's reply brief points out the fallacy of its own argument:

"In a case involving liability for excess profits tax, such as the present, the determination of the correct amount of such liability is no simple matter. * * *

* * * * * *

"Where a taxpayer prepares a complicated income and excess profits tax return for a particular year in good faith, conscientiously and intelligently, he admits liability for the amount of tax shown on that return, and in effect he denies any greater tax liability. * * *

* * * * * *

"It is clear that an essential element for the determination of any deficiency in excess profits tax is the correct amount of the excess profits credit. In the present case the amounts of the excess profits credit for all of the years in question * * were in dispute until the litigation was terminated in 1956."

Clearly there was a contest as to the assessed deficiency. We are of the opinion that this controversy extended to the whole of the assessment for which liability was not recognized or admitted. Even if the taxpayer only contested a small portion of the assessed deficiency when it brought suit in 1950, we still cannot find that accrual of the other items occurred in 1948. Recognition of the liability by the taxpayer is essential for the accrual of an item of expense for deduction purposes. There should be an admission or at least an absence of denial of liability before an item may be accrued. In the instant case, the taxpayer expressly denied admission of liability

and reserved the right to file claims on any ground whatsoever, and to prosecute said claims in court. The determination to bring suit was not apparent until a subsequent year, i. e., by the bringing of the suit. Conceding plaintiff's position regarding the divisibility of its claim, it is reasonable to assume that the determination not to contest was not apparent until suit was filed in a subsequent year. We must make our determination on a manifested act of admission or denial rather than on the professed intention of the taxpayer at the close of the taxable year. If this were not true the taxpayer's undisclosed intention would be determinative of its tax liability.

Taxpayer attempts to limit the applicability of the Supreme Court's holding in the Consolidated Edison case to those instances where payment is a prerequisite to bringing suit. This in our opinion is an unrealistic restriction of the Supreme Court's ruling since the opinion emphasized that accruability of the tax, apart from the issue respecting "payment" and "satisfaction," was governed by the "all-events" test established in United States v. Anderson, supra. As the Court pointed out, an unconditional "payment" made by a taxpayer in apparent "satisfaction" of an asserted matured tax liability is plain and persuasive evidence that all the events have occurred. Therefore, payment must be considered in the light of the circumstances accompanying the payment, and where, such as here, payment is accompanied with a denial of liability it is impossible to say that all events have occurred. Payment, at most, is evidence of an admission of liability and in itself will not operate to render an item immediately accruable whether it is required in order to entertain a suit or whether it is made for the convenience of the taxpayer.

We are of the opinion that the result in the instant case is controlled by the Supreme Court's decision in United States v. Consolidated Edison, supra. We believe that there was a contest re-

garding all of the deficiencies assessed against the taxpayer. Further, this contest continued until 1956, when a final determination was rendered. Consequently, the deficiencies did not accrue in 1948 as claimed by plaintiff.

For the reasons stated above, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. Plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and DAVIS, DURFEE, and WHITAKER, Judges, concur.