**UNITED STATES of America,
Plaintiff,**

v.

**ATLANTIC & EAST CAROLINA RAILWAY CO., Defendant.**

**Civ. No. 497.**

United States District Court
E. D. North Carolina,
New Bern Division.

Dec. 16, 1964.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., H. L. Moody, Department of Justice, Washington, D. C., for plaintiff.

W. T. Joyner, Jr., Joyner & Howison, Raleigh, N. C., for defendant.

LARKINS, District Judge.

## SUMMARY

This cause comes before the Court upon a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, said motion being based upon a civil action by plaintiff, the United States of America, to recover a tax refund of $12,310.05 plus interest, pursuant to Title 26, U.S.C.A. § 7405 (b).

The plaintiff contends that the refund was erroneously made to the defendant, Railway Company, for the tax years 1952, 1953 and 1954. Plaintiff insists that the refund was the result of an allowance for defendant's claim for an additional deduction resulting from an increase in its per diem car rental expenses for the years involved, the increase being from $2.00 per car to $2.40 per car.

The refund was made on March 1, 1957 as a result of amended returns filed by the defendant for the years 1953, 1954 and related carrybacks. It is a fact that defendant did not actually pay the additional $.40 per diem car rental charges until the years 1957 and 1958. This delay resulted from the fact that it was a party defendant to an Interstate Commerce Commission action (Chicago, B. & Q. R. Co. v. New York, S. & W. R. Co., 297 I.C.C. 291 (1955)), this action terminating October 17, 1955. The I.C.C. held that the $2.40 per diem rate was not unreasonable for the years following its establishment. Defendant had been refusing to pay any of the per diem in excess of $2.00 between August 1, 1953 (the date the per diem was increased from $2.00 to $2.40) and the date of the I.C.C. opinion, it having averred that the $2.40 rate was unreasonable.

Defendant is an accrual basis taxpayer and contends that the additional $.40 per diem was accrued in the years 1953 and 1954 and that the mere contesting of the reasonableness of the added $.40 does not mean that liability for that amount was not settled. This is so, defendant insists, for the reason that the *fact* of liability was never contested by it.

## FINDINGS OF FACT

The following are the undisputed facts and the basis of partial summary judgment:

1. The defendant is a short-line railroad and during the periods in question in this suit received freight cars in interchange from other railroads, for which defendant was required to make per diem payments, as were other railroads of like nature.

2. The procedure for establishing per diem rental charges on such cars was approved by the Interstate Commerce Commission in its report effective October 7, 1950. (See I.C.C. Report and Order, 277 I.C.C. 413 (1950)).

3. Pursuant to these established procedures, the per diem charge was fixed at $2.00 on May 1, 1952, and increased to $2.40 on August 1, 1953. The defendant, however, computed per diem rentals at the $2.00 rate through the year 1954.

4. In September 1953, several of the larger Class I railroads (those with cars available for rental at the per diem rate) filed a complaint with the I.C.C. against a number of the smaller Class I railroads, and against several of the short-line railroads, including the defendant. This suit was in regard to the disagreement over the reasonableness of the per diem charges. Included in this question was the question of the reasonableness of the $2.40 per diem rental charge.

5. On October 17, 1955, the I.C.C. held that the per diem charge of $2.40 was not in excess of reasonable compensation. See Chicago, B. & Q. R. Co., supra.

6. The taxpayer-defendant filed amended tax returns on July 11, 1956 and made claims for the years 1953 and 1954.

7. On November 1, 1956, defendant was one of many parties joined together for the purpose of seeking an injunction against the enforcement of the I.C.C. order of October 17, 1955. See Boston & Maine Railroad et al. v. United States and I.C.C., 162 F.Supp. 289 (D.Mass., 1958). The defendant contended that it was an

involuntary party to this suit and was granted its motion to dismiss itself therefrom on December 23, 1957. The plaintiff has not contested this contention.

8. On its tax return for the year 1955, the taxpayer computed the car rentals on the $2.40 per diem basis. The tax return for the year 1955 reflected a substantial net loss which was claimed as a carryback to the year 1953.

9. The amended returns for the years 1953 and 1954 showed a deduction for the additional per diem, and these additional per diem rates shown on the amended returns generated a loss carryback which was absorbed by 1952 income and served as a basis for the 1952 refund claim.

10. The District Director allowed as correct the additional accruals the taxpayer claimed for the years 1953 to 1955, inclusive, with respect to the increased car rentals.

11. Accordingly, the claims for the years 1952, 1953 and 1954 were allowed in full and the refunds made March 21, 1957, totalling $12,312.05, consisting of a refund for the year:

1952—$7,916.56
1953—$2,466.12
1954—$1,929.37

12. Subsequently, the District Director made a re-examination of the returns in question and concluded that the accruals allowed with respect to the increase in car rentals should not have been allowed in that the defendant was contesting the increase and such legal action had not been concluded.

13. In a memorandum dated November 11, 1957, the defendant's superintendent of car service sent to all other railroads, notice that defendant admitted liability for payment of the increased per diem rates which had accrued from August 1, 1953, the date the per diem rate was increased from $2.00 to $2.40. In that memorandum, defendant requested all railroads to bill taxpayer for the additional amounts of per diem due and owing from August 1, 1953.

14. During the years 1957 and 1958, defendant satisfied all proper claims against it for the increased per diem charges.

## CONCLUSIONS OF LAW

At issue in this motion for summary judgment is the "all events" test and how it is to be applied in this case. The test was set out in United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926), as follows:

"In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued."

It is acknowledged that this rule has been the prevailing rule for years and has been reaffirmed many times. For a recent and clear enunciation of this rule, and as a principle case in this matter, see United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed. 2d 356 (1961).

The "all events" test comes in question for purposes of determining the amount of tax to be applied whenever there occurs either the question of when to accrue a particular expense, as in this case, or when to accrue a particular item of income. The "all events" test is equally applicable to either set of circumstances, whether its income or expenses is to be accrued.

So long as the accrual accounting system is used, this question will arise for the reason that a taxpayer is going to seek the most advantageous financial situ-

ation in which to have his tax assessed. If there were no guide lines for the taxpayer and the Internal Revenue Service, then a taxpayer could use either or both the cash accounting method and the accrual accounting method in order to level his income from one year to another, thereby paying less tax and gaining an advantage over the purely cash accounting taxpayer.

While an understanding of the reason for the "all events" test in the case of the accrual accounting taxpayer is necessary, it is also important to understand the difficulty which arises because of it. That difficulty is that there are circumstances wherein the taxpayer can control events to such an extent as to determine if and when all the events have occurred for an item in a particular fiscal period, thus controlling indirectly his need to accrue or not to accrue that item of income or expense, as the case may be. To permit this result to operate freely would again give the accrual taxpayer an undue advantage.

The Code, in fact, requires that accounting periods be on the basis of one year, either fiscal or calendar, thereby denying the accrual basis taxpayer an unfair opportunity to "level income". See Title 26 U.S.C.A. § 441. "Periods for computation of taxable income."

As far as the above stated considerations concerning the "all events" test and the accrual method taxpayer, they have been formulated into regulations under Title 26 U.S.C.A. § 461, CFR Section 1.-461–1(a)(2) and (3)(i); the same being particularly applicable to the case at hand.

Section 1.461–1(a) (2) states: *"Taxpayer using an accrual method.* Under an accrual method of accounting, an expense is deductible for the taxable year in which *all the events have occurred* which determine the *fact of liability and the amount* thereof can be determined with reasonable accuracy. (Emphasis added.) * * * While no accrual shall be made in any case in which all the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy."

Section 1.461–1(a) (3) states: *"Other factors which determine when deductions may be taken.* (Emphasis added.)

(i) Each year's return should be complete in itself, and taxpayers shall ascertain the facts necessary to make a correct return. The expenses, liabilities, or loss of one year cannot be used to reduce the income of a subsequent year. A taxpayer may not take advantage in a return for a subsequent year of his failure to claim deductions in a prior taxable year in which such deductions should have been properly taken under his method of accounting. * * * * "

How and to what extent does the defendant fall within the regulations set forth above, as to plaintiff's claim for refund?

It is difficult to believe that if the I.C.C. hearings had determined that the Class I railroads were charging an unreasonable per diem rate, that defendant's conduct would have been the same as it in fact was. That it would have gone on and admitted liability for the years in question and paid the bills submitted to it as it later requested all railroads to do, is beyond the realm of practical business conduct. Defendant's assertion that it in no way intended to join in the injunction proceedings brought in the United States District Court of Massachusetts is not such as to defy reasonable belief, and the plaintiff has not sought to contest this contention.

This case is somewhat like the Consolidated Edison case, supra, as is contended by the plaintiff. In this respect, it is interesting to look to the opinion

of the Court of Appeals in that case, for in that opinion the Court said:

"In cases of a contested item of liability, accountants usually indicate the existence of contest by showing the item as contingent, or by a footnote. * * * When the exact nature of the payment is not immediately ascertainable because it depends on some future event, such as the outcome of litigation, its treatment for income tax purposes must await that event." Consolidated Edison Co. of New York, Inc. v. United States, 279 F.2d 152, 156 (2nd Cir., 1960).

The United States Supreme Court, in analyzing and affirming the holding of the Second Circuit, held that it was re-affirming the "all events" test of the Circuit Court and its own prior rulings. See United States v. Consolidated Edison, 366 U.S. 380, 81 S.Ct. 1326, 6 L. Ed.2d 356, supra; Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944); and, Dixie Pine Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944).

 The defendant, by not accruing the $.40 in question for the years 1953 and 1954, was denying liability for that portion of the per diem charges. This fact is made especially clear by the fact that many of the co-defendants in the I.C.C. action, Chicago, B. & Q. R. Co., supra, offered various sliding scale methods of determining per diem, and all seemed to be challenging the amount of the charges. Taking all the facts before the Court in the light most favorable to defendant, and realizing that in this respect, there is no dispute as to the material facts, the Court is not able to find any facts to indicate that defendant would not have abided a determination by the I.C.C. if that had been favorable to defendant.

It is, therefore, summarily determined that the $.40 per diem charge differential, not paid and not accrued as an expense in the years 1953 and 1954, was

in dispute and not accrued in amended returns as subsequently filed. The resulting claims as to this portion should be refunded to plaintiff. See C. I. R. v. Fifth Avenue Coach Lines Inc., 281 F.2d 556 (2nd Cir., 1960); and Burlington-Rock Island Railroad Co. v. United States, 321 F.2d 817 (5th Cir., 1963).

Defendant's contentions are not totally without merit, however, and its own course of conduct indicates that it clearly considered the disputed $.40 as having been accrued in the year 1955. Section 1.461–1(a) (2) admonishes the taxpayer to abide all the events in the year in which the fact of liability has occurred. In the year 1955, defendant was determined to be liable, and defendant abided that decision by accruing the deduction. It was not until November 1956 that defendant was made a party to the injunction action in the Massachusetts District Court. (Boston & Maine Railroad et al. v. United States and I.C.C., 162 F.Supp. 289 (D.Mass., 1958).

 The reach of the regulation cannot reasonably be interpreted to have the effect of nullifying a formerly accrued deduction due to an event arising subsequent to the actual filing of the return. The admonitions of the regulation are equally binding on the Internal Revenue Service and Section 1.461–1(a) (3) (i) holds each year must be "complete in itself". The fact that in November 1956, defendant is made a party to an action, involuntarily so, (when taking the facts in a light most favorable to defendant), it would seem that the effect of the "all events" test would have expired on that particular accrual.

It is, therefore, summarily determined that the 1955 return, filed in 1956 and reflecting losses for the year 1955 and thereby entitling the defendant to a carryback for such losses, should be allowed. See Richmond Hosiery Mills v. United States, 305 F.2d 840 (Ct.Cl. 1962).

### JUDGMENT

The motion of the plaintiff for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure, having been presented, and the Court being fully advised,

The Court finds that each of the parties is entitled to a partial summary judgment pursuant to Rule 56(d), and as a matter of law.

It is therefore ordered and adjudged that the plaintiff's motion for summary judgment partially be, and the same is hereby allowed, and that the plaintiff have and recover those refunds attributable to the years 1953 and 1954, said amounts to be determined by the Internal Revenue Service in accordance with this Opinion and Order.

It is further ordered and adjudged that the defendant have partial summary judgment for dismissal of plaintiff's claim for the year 1955, in that portion of the total amount sought, to be determined by the Internal Revenue Service in accordance with this Opinion and Order.

## ORDER

Therefore, pursuant to the provisions of Rule 56(d) of the Federal Rules of Civil Procedure, it is ordered that the Internal Revenue Service submit a report of an accounting to the Court, with copies to plaintiff and defendant and counsel for plaintiff and defendant, in accordance with the Judgment as hereinabove set out.

It is further ordered that the parties take notice that the Court herein retains jurisdiction of this action until such time as it shall hereafter make a determination of the remaining issues before the Court, after receipt of the report of the accounting from the Internal Revenue Service.

It is further ordered that the Clerk serve a copy of this Opinion, Judgment and Order upon the Honorable Robert H. Cowen, United States Attorney, Raleigh, North Carolina; Honorable J. E. Wall, Director, Internal Revenue Service, Greensboro, North Carolina; Mr. W. T. Joyner, Assistant Division Counsel, Southern Railway System, Raleigh, North Carolina.