SEIBERLING RUBBER COMPANY, a Delaware Corporation,

v.

The UNITED STATES.

No. 32–58.

United States Court of Claims.
Jan. 12, 1962.
Rehearing Denied March 7, 1962.

Edward C. Park, Boston, Mass., for plaintiff.

Benjamin H. Pester, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Lyle M. Turner and Rufus E. Stetson, Jr., Washington, D. C., on the brief.

LARAMORE, Judge.

This is a suit to recover alleged overpayments of income taxes for the years 1948 and 1950, to which plaintiff claims it is entitled as the result of a net operating loss for the year 1949.

The taxpayer, during all times material to this case, kept its books and records and filed its Federal tax returns on the accrual method of accounting. In the years prior to 1946 it filed its Federal tax return on a fiscal year basis ending October 31. Since 1946, however, it has filed its Federal tax returns on the calendar year basis.

In 1949, taxpayer paid excess profits tax deficiencies imposed by subchapter E of chapter 2 of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 710 et seq. for the years 1941 through 1945. The net amounts of such deficiencies were as follows:

Taxable year ended
   October 31, 1941 ........$ 13,321.24
Taxable year ended
   October 31, 1942 ........ 65,637.94
Taxable year ended
   October 31, 1943 ........ 92,660.28
Taxable year ended
   October 31, 1944 ........ 102,240.15
Taxable year ended
   October 31, 1945 ........ 95,029.96
Period Oct. 31, 1945
   to Dec. 31, 1945 ......... 31,335.62

     Total ...............$400,225.19

In computing plaintiff's tax liability for the year 1949, the Commissioner did not allow any part of the above-listed deficiencies as a deduction for that year. Since taxpayer is on the accrual method of accounting, any deduction to which it is entitled must be claimed for the year in which it accrued. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024. Defendant does not deny that the accruing of these deficiencies gives rise to a deduction, but contends that the deficiencies in this instance accrued in 1948. Hence, the defendant avers that an accrual-basis taxpayer may not deduct an expense in a year other than the one in which it accrued.

On the other hand, plaintiff contends that either the deficiencies accrued in 1949, in which event it is entitled to a deduction of the full amount for that year, or part of the deficiencies accrued in 1948 and part in 1949, but in either event the result would be substantially similar.

The primary question for our consideration is when did the liabilities accrue. We answer this question in the light of the facts and circumstances of the case.

In 1941 and 1942 taxpayer had income on which excess profits taxes were assessed. The plaintiff contested the amount of the assessments and brought suit in the Tax Court on two counts.[1] The opinion is reported at 8 T.C. 467. Plaintiff was unsuccessful in its efforts in the Tax Court on both counts, but appealed to the Court of Appeals for the Sixth Circuit. The Court of Appeals affirmed the Tax Court on one count and reversed that Court on the other count. Seiberling Rubber Co. v. Commissioner, 6 Cir., 169 F.2d 595. On mandate from the Court of Appeals the Tax Court computed plaintiff's taxes for the fiscal years 1941 and 1942. The decision of the Court of Appeals also caused a reduction in plaintiff's equity invested capital as reported on its returns for the fiscal years ending October 31, 1943, 1944, 1945 and the period October 31, 1945, to December 31, 1945, which resulted in determinations of deficiencies in excess profits taxes for those years. No petition for a writ of certiorari was filed with the Supreme Court by either party, the time for filing having expired on October 17, 1948. On November 24, 1948, the Tax Court entered its decision pursuant to the mandate of the Court of Appeals. On December 3, 1948, the Tax Court, on its own motion, modified its decision of November 24, 1948.

The examination of plaintiff's tax liabilities for the years 1943, 1944, and 1945 was delayed pending the Tax Court's decision for the years 1941 and 1942. This examination was conducted by a revenue agent and extended from about August 2, 1948, until the latter part of December of that year. During this period, many additions to income were proposed by the agent and many deductions he proposed to disallow. The agent completed his examination and left a form 874, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment", with plaintiff's representatives. Plaintiff's representatives did not agree to sign form 874, nor did they agree to accept the agent's determinations. They told the agent that they would wait until the final report was received and that the report would be submitted to plaintiff's auditors before a decision would be made. Although the agent's report was dated

---

[1]. 1st: Whether transactions conducted in 1934 whereby Seiberling Rubber Company acquired the Kemitex Products, Inc., stock amounted to a nontaxable reorganization within the meaning of section 112(b) (3), (4), or (5) of the Revenue Act of 1932, 26 U.S.C. § 112.

2nd: Whether Seiberling Rubber Company, in computing its equity invested capital under the excess profits tax provisions was entitled to include in its accumulated earnings and profits at the beginning of each taxable year such portion of the partial bad debt deduction which was disallowed as a deduction for income tax purposes in 1939.

December 27, 1948, the final corrected copy was not mailed to plaintiff until February 15, 1949. However, on January 13, 1949, plaintiff signed form 874, accepting the deficiencies and overassessments for the years 1943, 1944, and 1945. It is the amount of the deficiencies, as determined by the Tax Court for the years 1941 and 1942, and as agreed upon by the waiver for the years 1943, 1944, and 1945, that the plaintiff alleges was illegally and erroneously disallowed as a deduction in the computation of its net operating loss for 1949. The Commissioner has recognized a net operating loss for that year to the extent of $627,252.51, which amount does not include any of the tax deficiencies discussed above.

The plaintiff was permitted to carry back $441,136.87 of its loss to 1947 which completely relieved plaintiff of any tax liability for that year and all taxes paid by plaintiff for that year were subsequently refunded. The difference between the net operating loss recognized by the Commissioner in 1949 and that allowed as a carry back to 1947 was applied against plaintiff's income for 1948. As a result, the plaintiff's tax liability was reduced to $123,464.50 and all amounts in excess of that figure paid by taxpayer for 1948 have been returned to it. Any additional deduction granted plaintiff for 1949 will increase its net operating loss for that year, which in turn will be carried back to further reduce plaintiff's tax liabilities for 1948. If the full amount of the tax deficiencies is recognized as a liability for 1949, it will completely wipe out gross income for 1948 and leave a credit which may be carried over to 1950 and reduce plaintiff's tax liability for that year. The deductions sought by plaintiff are provided for under pertinent provisions of the Internal Revenue Code of 1939.[2] The issue is whether plaintiff is entitled to the deductions sought.

Since the considerations which determine when the 1941 and 1942 deficiencies accrued are not identical with those applicable to the 1943, 1944, and 1945 deficiencies, we shall discuss the two periods separately.

The 1941 and 1942 deficiencies accrued in the year the decision of the Tax Court became final. Commissioner of Internal Revenue v. Fifth Avenue Coach Lines, Inc., 2 Cir., 281 F.2d 556. Both parties regard this to be the law, but they disagree as to when the decision of the Tax Court became final. Section 1140(c) (2) of the Internal Revenue Code of 1939 provides:

"§ 1140. Date when Tax Court decision becomes final.

\*    \*    \*    \*    \*    \*

"(c)  Decision modified or reversed

\*    \*    \*    \*    \*    \*

"(2) Upon mandate of court of appeals.

"If the decision of the Tax Court is modified or reversed by the court of appeals, and if (1) the time allowed for filing a petition for certiorari has expired and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the decision of the Tax Court rendered in accordance with the mandate of the court of appeals shall become final on the expiration of 30 days from the time such decision of the Tax Court was rendered, unless within such 30 days either the Commissioner or the taxpayer has instituted proceedings to have such decision corrected so that it will accord with the mandate, in which event the decision of the Tax Court shall become final when so corrected."

The statute provides that the decision of the Tax Court becomes final 30

2. The applicable statutes are sections 122 (a), 122(b), 122(d), and 322 of the Internal Revenue Code of 1939 (26 U.S.C. (1952 Ed.) §§ 122, 322). Inasmuch as these statutes are not really in contest in this case, it would serve no useful purpose to abstract them here.

days from the time the decision was rendered. However, the statute recognizes an exception; i. e., when the Commissioner or the taxpayer has instituted proceedings to have such decisions corrected it shall become final when so corrected. Since this is the only exception provided for, it is reasonable to assume that it was the only exception intended. Neither the Commissioner nor the taxpayer instituted proceedings to correct the Tax Court's decision of November 24, 1948. We conclude from this that a correction initiated on the Court's own motion will not render its decision immediately final, thus cutting off all rights of the parties to seek review. But it does not follow that the correction creates a new 30-day period before finality is secured. The statute clearly provides for a 30-day period during which time an appeal may be taken, but on the expiration of that period the court is without jurisdiction. Crews v. Commissioner, 10 Cir., 120 F.2d 749. Under the statute the court on its own motion by merely correcting its judgment can neither extend nor contract the period during which it maintains jurisdiction. Furthermore, the correction by the Tax Court of its decision of November 24, 1948, did not alter the net result, it merely increased the amount of the tax imposed from $65,637.94 to $68,760.06, but made the later amount subject to a postwar credit of $3,122.12. The modification was purely a formal or mechanical one, for it stated that in all other respects the "Decision" would stand as before entered.[3]

■ When the Tax Court rendered its decision on November 24, 1948, it started the running of a 30-day period which expired on December 24, 1948. Plaintiff recognized that this might be our determination and urges upon the court the further claim that in the event plaintiff is denied the deduction for 1949, it is entitled to the deduction for 1948, because plaintiff alleges it filed an amended claim

on December 12, 1955. The "amended" claim reads in pertinent part, as follows:

"This is not a new claim, but is a clarifying amendment of claim for $24,923.21, filed May 5, 1954.

"The original claim was based on a carryover of net loss from 1949 to 1950, in the amount of $43,120.45. It is the company's primary position that its additional excess profits taxes for 1941–45, $400,225.19, paid in 1949, accrued in 1949.

"It may be possible that the additional excess profits taxes for 1941 and 1942, $78,959.18, accrued in 1948, because it was in 1948 that the decision by the U. S. Circuit Court of Appeals for the Sixth Circuit became final, and it may be that the additional excess profits taxes for 1943–45, also accrued in 1948.

"The purpose of this amended claim is to point out that, as far as 1950 is concerned, it doesn't make any substantial difference in the loss carry-over to 1950, whether the additional excess profits taxes (whether for 1941–42 or 1943–45) accrued in 1948 or 1949. Lewyt Corporation v. Commissioner [349 U.S. 237, 75 S. Ct. 736, 99 L.Ed. 1029] 55–1 USTC Par. 9460."

Since the amendment pertains solely to plaintiff's claim to a loss carryover to 1950, it is unnecessary to determine whether in fact it is a timely filed amendment or a new claim because plaintiff must first show that a loss resulted in 1949 which could be used as a carryover to 1950. As it is our determination that the liability accrued in 1948, what plaintiff is really seeking is a deduction from gross income for 1948, and this, of course, would necessitate a recomputation of plaintiff's tax returns for that year. The amendment does not pertain to plaintiff's 1948 tax liability because no claim was filed for 1948. A new claim would be barred by the period of limitation in

---

3. For a discussion of an analogous problem dealing with appealability in the Federal courts, see 75 Harv.L.R. 351, 356 (1961), and the authorities cited therein.

which a claim must be filed (26 U.S.C. (I.R.C.1939) § 322(b) (1) (1952 Ed.) ). Therefore, the court will consider the question moot.

■ This brings us to the major portion of plaintiff's claim which is based on plaintiff's contention that the liability for the deficiencies assessed for 1943, 1944, and 1945 accrued in 1949. Surely, we cannot find that these tax liabilities accrued before the Tax Court's decision of November 1948 became final. When then did the liabilities accrue? The general rule determinative of when a liability accrues is based on a leading Supreme Court decision, United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, and may be paraphrased as follows: If it is uncertain whether or not any liability exists there can be no accrual, for tax purposes, until the contingency disappears and the fact of liability becomes fixed and certain. If liability is recognized, but the amount is not yet determined, an estimated reasonably accurate amount should be accrued. The test of when the liability is recognized, established in United States v. Anderson, supra, has become the so-called "all events" test which the Court described as follows:

"* * * In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued." [p. 441, 46 S.Ct. p. 134.]

The Supreme Court amplified the "all events" test in its holding in Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270. In that case the Court held that an accrual-basis taxpayer contesting liability in the courts could not have an accrual until the liability was established, but "might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated." (320 U.S. at 519, 64 S.Ct. at 365)

That principle was specifically affirmed in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, and United States v. Consolidated Edison Co. of New York, Inc., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356.

■ The position of the Internal Revenue Service, since 1947, has been that unpaid amounts asserted against a taxpayer as additional taxes, subject to a *bona fide* contest, cannot be accrued so long as they are unsettled in amount and before the fact of liability is established, G.C.M. 25298, 1947–2, C.B. 39. It is our view that the very narrow issue presented is when was liability established. The facts are clear that the determination by the Court of Appeals regarding plaintiff's taxable years 1941 and 1942 resulted in decreased excess profits credits based upon invested capital for succeeding years 1943, 1944, and 1945. This established plaintiff's liability which accrued when the decision of the Tax Court became final.

True, there was a dispute as to the amounts claimed by the taxpayer and amounts claimed by the Internal Revenue Service. It is also true that the Revenue Agent's formalized report was not received by the plaintiff until February of 1949. However, the agent did deliver to the taxpayer his report in 1948, and in January before the formal report was delivered, after an audit, taxpayer's auditor recommended that it sign form 874, the Waiver. This audit was made and undoubtedly based on figures contained in the agent's 1948 report and information contained in taxpayer's own books and records. Thus, we must hold that the

tax accrued in 1948 within the meaning of the statute and cited cases. While this may be harsh treatment of the taxpayer, the fact that it might equitably be entitled to the deduction cannot be taken into consideration by this court. United States v. Olympic Radio & Television, Inc., supra.

Consequently, the taxpayer's claim must be denied, and the petition will be dismissed.

It is so ordered.

JONES, Chief Judge, DURFEE, Judge, and REED, Justice (ret.), sitting by designation, concur.