**E. I. duPONT de NEMOURS AND COMPANY**

v.

**The UNITED STATES.**

Nos. 425-61, 426-61, 427-61.

United States Court of Claims.

Decided April 16, 1965.

As Amended April 23, 1965.

issues have been severed and compromised. The remaining two issues involve only the excess profits tax for the years 1951 and 1952. We shall refer to these issues as the 1951 Issue and the 1952 Issue, respectively. The facts relating to both were fully stipulated, and are set out in the printed report of Commissioner Cowen, now Chief Judge Cowen, filed March 26, 1964. We have adopted the Commissioner's Report as the court's Findings of Fact. Since the two issues to be decided involve interpretations of different sections of the Internal Revenue Code of 1939, we shall examine each issue separately.

### The 1951 Issue

In its computation on its 1951 return of its equity capital at the beginning of the taxable year as an element in its excess profits credit, plaintiff did not take into account any liability for excess profits tax for the calendar year 1950. On its audit of plaintiff's 1951 income and excess profits tax return, the Internal Revenue Service determined that plaintiff's liability for excess profits tax for the calendar year 1950 should be taken into account in computing its equity capital at the beginning of the taxable year, and that the amount to be taken into account for such purposes was $31,652,235.29. Plaintiff has paid the additional excess profits tax for 1951 which resulted from such determination. This additional sum of $1,139,480.00 is the amount of refund sought in this issue.

This issue involves a determination of the question of whether at the beginning of the year 1951 plaintiff's 1950 excess profits tax constituted a liability of plaintiff. If the 1950 excess profits tax was a liability at that time, it should have been taken into account in computing plaintiff's excess profits credits for 1951. Plaintiff contends that its 1950 excess profits tax had not become a liability at the beginning of 1951, because it was imposed by the Excess Profits Tax Act of 1950 (Public Law 909, 81st Cong., 2d Sess.; 64 Stat. 1137), which was not enacted until January 3, 1951.

Karl R. Price, Washington, D. C., for plaintiff. Charles A. Rittenhouse, III, Roy A. Wentz, Jr., Wilmington, Del., and Alvord & Alvord, Washington, D. C., of counsel.

Mildred L. Siedman, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer for defendant. C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

Before LARAMORE, Acting Chief Judge, DURFEE, DAVIS and COLLINS, Judges, and JONES, Senior Judge.

DURFEE, Judge.

These are suits, which were consolidated for trial, for refund of income and excess profits taxes for the calendar years 1951, 1952 and 1953. All but two of the

It will be necessary, in order to achieve clarity in our discussion of this issue, to outline the requirements and interrelationships of the various sections of the 1939 Internal Revenue Code dealing with this problem. Plaintiff computed its excess profits credit for 1951 on the income method prescribed by section 435 of the Internal Revenue Code of 1939, 26 U.S.C. § 435, as amended (1952 ed.)

Under § 435(a) (1) of the 1939 Code the excess profits credit is the sum of three elements—83 percent of the average base period net income; 12 percent of the base period capital addition; and 12 percent of the net capital addition for the taxable year. The last element, net capital addition, is defined in § 435(g) (1) of the 1939 Code. It consists of the average amount of the capital addition separately computed for each day of the taxable year. Section 435(g) (3) of the 1939 Code tells how this daily capital addition is to be determined. It is the sum of the following three factors: the capital paid in after the beginning of the year and prior to such day; the increase in equity capital from the end of the base period to the beginning of the year; 75 percent of the increase in borrowed capital from the end of the base period to such day. The issue here relates to the second factor, the increase in equity capital, the complete definition of which in § 435(g) (3) (B) is as follows:

"(B) The amount, if any, by which the equity capital (as defined in section 437(c)) at the beginning of the taxable year exceeds the equity capital at the beginning of the taxpayer's first taxable year under this subchapter."

Under § 430 of the 1939 Code the calendar year taxpayer's first taxable year under the subchapter was 1950. Under § 435(g) (3) (B) the increase in its equity capital had to be measured from the beginning to the end of the calendar year 1950. This increase was then used as one of the factors to determine daily capital addition, which was used to compute net capital addition, one of the elements determinative of the excess profits credit.

Section 437(c) of the 1939 Code defines equity capital as follows:

"(c) *Definition of equity capital.*

"The equity capital of the taxpayer as of any time shall be the total of its assets held at such time in good faith for the purposes of the business, reduced by the total of its liabilities at such time. * * * "

In computing the § 435(g) (3) (B) increase in its equity capital on its 1951 return, plaintiff did not take its 1950 excess profits tax into account as one of its liabilities on January 1, 1951 because, as we have previously stated, the Excess Profits Tax Act of 1950 which imposed the liability, was not enacted until January 3, 1951.

Plaintiff feels that the fact that the Excess Profits Tax Act of 1950 was not law on January 1, 1951, and did not become law until two days later, is all important. Its argument is a simple one—if there was no obligation to pay excess profits taxes on January 1, there was no existing liability in determining equity capital. Plaintiff further contends that if a "liability" for 1950 excess profits taxes might be said to have existed at the beginning of 1951 in any sense of the word at all, it was a liability which was not absolute, but contingent on the subsequent enactment of the excess profits tax bill, and may not, therefore, due to the "all events" test,[1] be accrued.

Plaintiff's position is, however, completely contrary to all existing law on this issue. Treasury Regulations 130, sec. 40.437–5(c) (2) (1954), as amended, T.D.

1. Cf. The "all events" test of United States v. Anderson, 269 U.S. 422, 46 S. Ct. 131, 70 L.Ed. 347 (1926); Dixie Pine Products v. Commissioner of Internal Revenue, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); and Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944). See also United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961).

6065, 1954–1 Cum.Bull. 163 deals precisely with the situation here involved by providing:

"In computing liabilities as of the beginning of the taxable year, a taxpayer keeping its books and making its income tax returns on the accrual basis shall, in accordance with the principles applicable in the determination of earnings and profits, treat as a liability the Federal income and excess-profits taxes imposed for the preceding taxable year. This rule is applicable whether or not such taxes were definite and ascertainable in amount at the close of the preceding year and whether or not such taxes were contested by the taxpayer. The provisions of the Excess Profits Tax Act of 1950 shall be taken into account for this purpose in determining the income and excess-profits tax for taxable years ending after June 30, 1950. In general, changes in the Federal income and excess-profits tax laws applicable to a taxable year enacted after the close of such year, will be taken into account in determining liabilities if the last date prescribed for filing the return for such year is subsequent to the date of enactment of such changes."

In American Enka Corp v. Commissioner, 30 T.C. 684 (1958) (Issue 3), precisely this same issue was presented, and the Tax Court (in a unanimous decision reviewed by the court) upheld the validity of the Regulations and reasoned that not to reflect the liability for the 1950 excess profits tax as of the beginning of 1951 for purposes of computing the 1951 excess profits credit would produce "a patently inaccurate conclusion of financial worth." 30 T.C. p. 699. American Enka, supra, was followed by the Tax Court in Kimble Glass Co. v. Commissioner, 35 T.C. 1238 (1961). In Ladish Co. v. United States, 301 F.2d 257 (1962), the Seventh Circuit similarly held that it was in agreement with the Tax Court's reasoning in American Enka, supra, and upheld the validity of the Regulations.

We think it is especially significant that the United States Court of Appeals has ruled on this question, and after carefully examining the opinion in Ladish Co., supra, feel disposed to follow it. The court in Ladish Co., supra, dealt specifically with the "all events" test problem. It stated at pp. 258–259:

"We consider the tests applied in those cases [cases relied upon by plaintiff] inapplicable to the case at bar. In them the questions, even if involving excess profits taxes, concerned deductions from or inclusions in taxable income."

The court in concluding a valid distinction existed on the above ground, stated at p. 259:

"Here we have not a question of inclusion in or deduction from 1950 taxable income. The problem here was to establish equity capital as a basis for determining plaintiff's excess profits credit, for computation of its 1951 taxes. * * *"

In reference to the passage date of the Act, the court stated at p. 259:

"We are not persuaded that Congress intended to fix the term 'at the beginning' with such precision as plaintiff urges. We agree with the reasoning of the Tax Court in American Enka Corp. * * * and apply it to the case at bar to state that it was 'necessary' to do what Regulation 130 directs in establishing equity capital at January 1, 1951, that is, to make adjustments for the retroactively imposed excess profits tax liability created in the Act. * *

"Congress could not have intended, when it passed the Act, to set an inflexible point in time. It intended to create the tax liability retroactively in order to secure the 1951 excess profits tax. This required the doing of what Regulation 130 directed and what the Commissioner did in recomputing plaintiff's return."

▮ We are in complete accord with the reasoning and the conclusions of the

7th Circuit in the Ladish Co. case. Plaintiff has attempted to show a conflict between that case and a decision of this court. Memphis Transit Co. v. United States, 297 F.2d 542, 155 Ct.Cl. 797 (1961) cert. denied, 371 U.S. 815, 83 S.Ct. 26, 9 L.Ed.2d 56 (1962). However, the Memphis Transit Co. case dealt with an entirely different issue—the effect of carrybacks of net operating losses and unused excess profits credits from *later* years (1945 and 1946) on earnings and profits for *earlier* years (1943 and 1944). Such carrybacks obviously could not be used as the measure of fair earning power during the earlier years. In Memphis Transit Co., supra, the carrybacks sought to be applied were dependent upon facts which related not to the taxable year but to some later year. This is a far cry from the facts of this case where the 1950 excess profits taxes are held to constitute a liability to plaintiff in determining its equity capital at the beginning of 1951.

Accordingly, plaintiff's petition on the first issue of this case—the 1951 Issue is dismissed.

### The 1952 Issue

In 1952 interest in the amount of $7,535,167.00 was allowed to plaintiff on excess profits tax overpayments for 1942 and 1945, and interest was assessed against plaintiff on income tax deficiencies for 1942 and 1945 in the amount of $3,647,435.00.

The interest on the excess profits tax overpayments was reported as gross income on plaintiff's income and excess profits tax return for 1952, and treated as such on the audit of such return. The interest on the income tax deficiencies was claimed as a deduction on plaintiff's income and excess profits tax return for 1952, and allowed as such on the audit of such return.

On its 1952 return, plaintiff availed itself of the adjustment prescribed under § 456 of the Internal Revenue Code of 1939, 26 U.S.C. § 456 (1952 ed.), which limits the excess profits tax imposed on abnormal income. The availability and amount of the adjustment is determined in three principal steps, as prescribed by subsections (a), (b) and (c) of § 456, substantially as follows:

"(a) by determining the amount of 'net abnormal income' of the taxable year.

"(b) by determining the years to which such 'net abnormal income' is attributable.

"(c) by computing the amount of excess profits taxes which would have been payable on the 'net abnormal income' if it had been realized in the year or years to which it was attributable, and by substituting such amount of taxes for the tax otherwise computed on such income in the taxable year."

The excess profits tax for the taxable year is limited to the amount indicated by these computations.

Only the first of these steps is in controversy here, the determination of plaintiff's "net abnormal income," which is required to be made as follows: Under § 456(a) (2), items of gross income in the taxable year must first be classified. One of the classes, defined in § 456(a) (2) (A) consists of the gross income, including the interest, arising out of the recovery of claims, awards, judgments and decrees. Under § 456(a) (3), the sum of the several items of gross income in a particular class for the taxable year must be reduced by 115 percent of average gross income of the same class for the four immediately preceding years, *and* by a proportionate part of "* * * any costs or deductions *relating to* such abnormal income, allowable in determining the normal-tax net income for the taxable year * * *." [Emphasis supplied.] The remainder constitutes the "net abnormal income" for the year.

Plaintiff's § 456 computation included the interest allowed in 1952 on the above mentioned excess profits tax overpayments as abnormal income within the class defined in § 456(a) (2) (A), (income from judgments, claims, awards,

and interest thereon). The total abnormal income reported by that class was $7,591,866.00 of which $7,535,167.00 consisted of interest on the above mentioned 1942 and 1945 excess profits tax overpayments. In order to determine its "net abnormal income" as defined under § 456(a) (3), plaintiff deducted from its abnormal income of $7,591,866.00 classified under § 456(a) (2) (A) the amount of $387,323.00 (115 percent of the average amount of income of the same class for the preceding four years). This computation showed net abnormal income of $7,204,543.00 of which $6,760,-167.00 was attributed to other years. In this computation plaintiff did not refer to or take into account the interest on the income tax deficiencies for 1942 and 1945, which accrued in 1952 and was claimed and allowed as a deduction on plaintiff's 1952 return.

In its audit adjustment to plaintiff's § 456 computation, the Internal Revenue Service offset the 1952 gross income allocated to the § 456(a) (2) (A) class by 1952 interest deduction of $3,647,435.00 consisting of the interest accrued on the 1942 and 1945 income tax deficiencies. Accordingly, the net abnormal income for 1952 in this class was determined to be $3,557,108.00, and the portion attributed to other years was $3,337,564.00. As a result of this adjustment, plaintiff had to pay an additional excess profits tax for 1952 in the amount of $741,-250.00, the amount now sought in refund.

Plaintiff maintains that a deduction for interest payable on a World War II income tax deficiency is not *related* to income consisting of interest receivable on a World War II excess profits tax overpayment within the meaning of § 456 (a) (3), since the two taxes represented independent liabilities, and there was no "causative relationship" between the interest cost and the interest income. In other words, plaintiff argues that because there is no relationship between the interest on excess profits overpayments and on the income tax deficiencies, the Government erred in reducing its net abnormal income.

We believe plaintiff's contention is correct. Precisely the same issue was presented in Polaroid Corporation v. Commissioner of Internal Revenue, 278 F.2d 148 (1st Cir. 1960).[2] In Polaroid, supra, the taxpayer had income in 1951 consisting of interest on overpayments of excess profits taxes for 1942 and 1943, and deductions for interest on deficiencies in income taxes for the same years. In computing taxpayer's net abnormal income for 1951, the Commissioner offset the interest received on the excess profits tax overpayments by the interest paid on the income tax deficiencies. The Court of Appeals reviewed the legislative history of § 456; made a comparative analysis of the pertinent language of § 456, and its predecessor, and concluded at p. 156 that the reference in § 456(a) (3) to "costs or deductions relating to such abnormal income" was intended to require " * * * a limited, causative relationship, * * * falling far short of the meaning contended for here by the government. * * *"

After analysis of the opinion in Polaroid, supra, we are of the opinion that the case was correctly decided and we therefore choose to follow its course. Accordingly, plaintiff is entitled to recover on the 1952 Issue the amount of $741,250.00, plus interest as provided by law. The case is returned to the trial commissioner for computation of the amounts due to plaintiff pursuant to this opinion and the stipulation of the parties.

2. This case was affirmed by the Supreme Court, but only in relation to another issue. Certiorari was not requested on the issue at hand. See Jarecki v. G. D. Searle & Co., 367 U.S. 303, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961).