The CENTRAL RAILROAD COMPANY OF NEW JERSEY, for itself and as agent on behalf of its affiliated companies, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 82-64.

United States District Court
D. New Jersey.

Aug. 26, 1965.

Vincent E. McGowan, Jersey City, N. J., Richard J. Lally, New York City, of counsel, for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Burton G. Lipsky, Attys., Dept. of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., Nathan Edgar Finkel, Asst. U. S. Atty., Newark, N. J., for the Government.

MEANEY, District Judge.

This is a civil action brought by the plaintiff, The Central Railroad Company of New Jersey (sometimes hereinafter referred to as "the taxpayer"), for the recovery of internal revenue taxes in the amount of $47,756.56, allegedly erroneously and illegally collected by the defendant, United States of America. Jurisdiction is conferred by 28 U.S.C. § 1346(a) (1), and venue is provided for by 28 U.S.C. § 1402(a) (2), plaintiff's principal place of business being at Jersey City, New Jersey.

The case was submitted on briefs, exhibits and a stipulation of facts, and no hearing was held.

The sole question before the court is whether plaintiff in computing its 1949 Corporate Federal Income Tax was entitled to claim as a deduction interest in the amount of $137,282.20, representing interest on potential tax deficiencies for the years 1942 and 1943. If the deduction was properly taken in the 1949 tax return, plaintiff is entitled to judgment in an amount to be computed by the parties, in accordance with their stipulation. If the deduction was improperly taken, judgment must be rendered for the United States.

For all the taxable years referred to herein consolidated income tax returns were filed by the taxpayer and all its affiliated companies which were qualified to be included in a consolidated return; and the taxpayer kept its books of ac-

count and prepared its federal income tax returns on the calendar year basis and on the accrual basis of accounting.

The consolidated income tax returns filed by plaintiff for the calendar years 1949 and 1954 showed that there was no tax due for those years and that on a consolidated basis there was a net operating loss in each of those years.

In its consolidated return for the year 1952 the taxpayer reported a total income tax liability of $308,589.19, which was paid in full. In computing its tax liability for 1952 the taxpayer carried over the net operating loss for the year 1949 as part of its net operating loss deduction for 1952.

On November 13, 1956 the taxpayer filed a timely refund claim for the year 1952 in the amount of $308,589.19, pursuant to the net operating loss carryback provisions of section 172(b) of the Internal Revenue Code of 1954. The basis of the claim for refund was that a net operating loss sustained in 1954 was sufficient to eliminate all net income for the year 1952.

On February 1, 1962 the taxpayer was advised in statutory notice of partial disallowance that $47,756.56 of its claim for refund had been disallowed. Thereafter the balance of $260,832.63 of the claim was paid to the taxpayer. The basis of the partial disallowance was a reduction in the amount of $137,282.20 in the net operating loss for the year 1949, which had the result of reducing the net operating loss deduction for 1952. The sum of $137,282.20, as mentioned above, is an interest deduction claimed by the taxpayer in 1949. The Commissioner of Internal Revenue determined that this was not a proper item of deduction for the year 1949 on the ground that it had not accrued in that year. It is the $47,756.56 disallowance which plaintiff alleges was erroneously and illegally collected by the Government.

A review of certain earlier proceedings between the parties is essential to a fuller understanding of the instant controversy.

In 1942 the taxpayer's original consolidated return reported a net loss and no tax was paid. For 1943 the taxpayer reported net income of $3,260,542.55 and a tax liability of $1,338,322.49. For 1944 the taxpayer reported net income of $2,270,764.45 and a tax liability of $924,954.86. In 1945 the taxpayer's original return reported a net loss of $4,352,237.24.

After filing its 1945 return the taxpayer filed claims of refund for 1943 and 1944 on the basis of the carryback of the net operating loss for 1945. At this time the Commissioner of Internal Revenue, through an Agent, commenced an extensive examination of the taxpayer's returns for the years 1941 through 1946. This examination was completed on September 13, 1948, the Internal Revenue Agent making these determinations:

(1) Net income for 1942 before carrybacks was increased from zero to $868,981.71 and a tax deficiency was computed.

(2) Net income for 1943 before carrybacks was increased from $3,260,542.55 to $5,444,314.22 and a tax deficiency was computed.

(3) For 1944 the reported net income of $2,270,764.45 was decreased to a net loss of $1,416,158.93.

(4) The net loss for 1945 was increased from $4,352,237.24 to $4,657,302.08.

(5) Net income for 1942 was reduced from $868,981.71 to zero by the carryback of $868,981.71 from the net operating loss computed for 1944. This had the effect of eliminating the tax deficiency for 1942, but did not eliminate the interest on that deficiency accruing at 6% for the two years the deficiency was in existence, which interest totaled $38,799.30.

(6) Net income for 1943 was reduced from $5,444,314.22 to $323,308.19 as the result of the adjustments for 1944 and 1945, and the result-

ing net operating loss carrybacks from those years to 1943. The tax deficiency for 1943 was eliminated by these adjustments but the interest on the deficiency, $98,482.90, was not eliminated.

The net liabilities that resulted from the Agent's examinations were:

| | |
|---|---:|
| (1) Tax overassessment for 1943 | $1,233,638.39 |
| (2) Tax overassessment for 1944 | 924,954.86 |
| Total tax overassessment | $2,158,593.25 |
| (3) Interest deficiency for 1942 | $ 38,799.30 |
| (4) Interest deficiency for 1943 | 98,482.90 |
| Total interest deficiency | $ 137,282.20 |

On November 3, 1948 the taxpayer's trustee in reorganization (the taxpayer had been in reorganization since 1939) signed an Internal Revenue Service Form 873, entitled "Acceptance of Proposed Overassessment", which reads:

"The following overassessment or overassessments of tax are hereby accepted as correct: taxable year ended December 31, 1943 income tax in the sum of $1,233,638.39 taxable year ended December 31, 1944 income tax in the sum of $924,954.86 * * * amounting to the total sum of $2,158,593.25."

A notation on the bottom of Form 873 stated:

"The execution and filing of this acceptance at the address shown in the accompanying letter will expedite the indicated adjustment of your tax liability. This acceptance is not an agreement as provided under section 3760 of the Internal Revenue Code."

On December 21, 1948 the Internal Revenue Agent in Charge forwarded a letter to the taxpayer and enclosed a copy of the examining agent's statement of September 13, 1948 showing the results of the examination. The Agent in Charge also sent two letters to the taxpayer in which the taxpayer was advised to file supplemental claims for refund in order to protect its rights.

On February 15, 1949 the taxpayer received two notices from the Collector of Internal Revenue at Newark, New Jersey, both entitled "Statement of Income Tax Due" and both dated February 14, 1949. The first notice showed an assessment of $38,799.30, which was the interest on the potential deficiency for the 1942 income tax. Below this figure was the notation "1943 o/a (overassessment) pending 38,799.30" followed by "Balance due 0.00." The second statement, referring to the assessment of $98,482.90, representing interest on the potential deficiency for the 1943 income tax, contained a similar notation "1943-44 o/a (overassessment) pending 98,-482.90 Balance due 0.00."

No protest was ever made concerning the assessment of the above referred to interest on account of the years 1942 and 1943.

In January 1950 the taxpayer received payment in the sum of $2,473,101.00, which included the overassessments plus interest and excluded the $137,282.20, which was the total interest deficiency for the years 1942 and 1943.

As noted above, the decision in this case hinges on the determination of whether or not the taxpayer properly deducted the $137,282.20 in its 1949 return.

At the outset it should be stated that plaintiff is not raising any question concerning the propriety of the interest assessment on the potential deficiencies for the years 1942 and 1943. The cases of Manning v. Seeley Tube & Box Co.,

338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), and Hastings & Co. v. Smith, 224 F.2d 875 (3rd Cir. 1955), are dispositive of this issue in favor of the propriety of the assessment.

Section 43 of the Internal Revenue Code of 1939, which is applicable to the instant case, provided:

"The deductions and credits * * provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

Section 23(b) of the 1939 Code allowed as a deduction "[a]ll interest paid or accrued within the taxable year on indebtedness."

■ Since the taxpayer is on the accrual basis of accounting, any deduction to which it is entitled must be claimed in the year in which it accrued. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 (1955). Therefore the only question is whether the interest here involved accrued in the year 1949, there being no assertion by either of the parties that the deduction should be taken as of a different period "in order to clearly reflect the income."

The leading case on the question of when items of deduction accrue for federal income tax purposes is United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). There the court laid down as controlling the "all events" test, making these observations:

"In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued." 269 U.S. at 441, 46 S.Ct. at 134.

The recent case of United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961), reaffirmed the Anderson case, as amplified by Dixie Pine Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944), and Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944), as the "touchstone" for determining the year in which an item of deduction accrues.

The Dixie Pine Co. case, supra, in reaffirming the "all events" test laid down in Anderson, held that an accrual-basis taxpayer could not, while contesting in the courts liability for payment of a state tax, deduct the amount of the tax in the year in which it was exacted, but must await the outcome of the litigation and could claim the deduction only for the taxable year in which its liability for the tax was finally adjudicated. The Supreme Court in that case said, 320 U.S. at 519, 64 S.Ct. at 365:

"It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which *fix the amount and the fact* of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer." (Emphasis added)

This holding was reaffirmed in the Security Mills case, supra, where the Supreme Court said, 321 U.S. at 284, 64 S.Ct. at 597:

"It is settled by many decisions that a taxpayer may not accrue an expense *the amount of which is unsettled* or the liability for which is

contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting." (Emphasis added)

The Government in the instant case offers two alternative grounds for its contention that the taxpayer improperly took the interest deduction in 1949: (1) that all the events occurred which fixed the amount of the interest and determined the question of liability either on November 3, 1948, when the taxpayer agreed to the overassessments of tax for the years 1943 and 1944, or, at the latest, on December 21, 1948, when a copy of the examining agent's statement was sent by the Agent in Charge to the taxpayer, and that therefore the interest accrued in 1948; or (2) that if the court finds that liability for the interest deficiency was uncertain at the end of 1948, then it was still uncertain until January, 1950, when the taxpayer received payment for the overassessments, including credit for the interest deficiency, and that therefore the interest accrued in 1950.

The taxpayer, on the other hand, asserts that the interest accrued in February, 1949, when the Collector of Internal Revenue issued the statements of income tax due, referred to above, which noted the amounts of interest assessed for the 1942 and 1943 tax deficiencies.

■ It seems to this court that, applying the rules laid down in the Anderson, Dixie Pine and Security Mills cases, all supra, the interest accrued in the year 1949 and was properly deducted by the taxpayer in that year.

The Government's first point, that the acceptance of the overassessments fixed the amount of the interest and thereby determined finally the taxpayer's liability to pay the same, is not sound. The cases above referred to hold that the amount of the liability must be settled before the liability may be accrued. The amount of the interest here involved was not determined until February, 1949, when the Collector of Internal Revenue first informed the taxpayer in the "statements of income tax due", dated February 14, 1949, of the amount of interest which had been assessed. The overassessments, the amounts of which the taxpayer accepted in 1948, are only indirectly related to the interest on the tax deficiencies and do not determine the amount of the interest liability.

The cases further hold that there can be no accrual until any "contest" with respect to the liability involved has been terminated. It is obvious that the taxpayer could not decide whether or not to contest the assessed liability until it knew the amount of the assessment. And if it had decided to contest, of course the liability could not have accrued until the contest had been terminated. This furnishes another reason why the liability could not have accrued until the amount of the assessment had been determined. It makes no difference that no protest was ever made concerning the assessment, since there was a possibility that the taxpayer might decide to contest the amount of the assessment, which decision it could not make until that amount had been determined by the Internal Revenue Service.

There is another reason compelling the finding that the liability accrued in 1949. The amount paid to the taxpayer because of the 1943 overassessment included interest to January 19, 1950 on the full amount of the overassessment, except for $137,282.20, which was applied in payment of the interest assessed on the potential tax deficiencies. Interest on this latter amount was taken only to February 9, 1949. This indicates that the Government did not consider the taxpayer's liability to be determined until that date, and this court so finds.

The Government's alternative assertion, not contended very strenuously, that the liability did not accrue until 1950 is also without merit. The only basis for this contention is that if certainty of liability was not determined by the end of 1948, it likewise could not have been determined until January 24, 1950, when the taxpayer received payment for the overassessments, from which the interest on the potential tax deficiencies had been

deducted. This contention is invalid because of the court's determination that "all the events" occurred in 1949 and that the taxpayer properly took the interest deduction in that year.

For the foregoing reasons judgment will be entered in an amount to be determined by the parties, in accordance with their stipulation.

This opinion will serve as findings of fact and conclusions of law.

Let an appropriate order be submitted.